GEORGE S. CARDONA
Acting United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
CHRISTOPHER BRUNWIN
Assistant United States Attorney
Deputy Chief, Violent & Organized Crime Section
STEVEN R. WELK
California State Bar No. 149883
Assistant United States Attorney
Chief, Asset Forfeiture Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6166
    Facsimile: (213) 894-7177
    E-mail: Steven.Welk@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>RUBEN CAVAZOS, aka "Doc",<br>et al.,<br><br>        Defendants. | CR 08-1201 FMC<br><br>**GOVERNMENT'S COMBINED**<br><br>**1. OPPOSITION TO SUPPLEMENTAL BRIEF OF NON-PART MOVANT; AND**<br><br>**2. MOTION FOR RECONSIDERATION OF ORDER DENYING APPLICATION FOR ENTRY OF PRELIMINARY ORDER OF FORFEITURE AS TO REGISTERED TRADEMARKS; MEMORANDUM OF POINTS AND AUTHORITIES; [DECLARATIONS OF DARRIN KOZLOWSKI AND STEVEN R. WELK FILED SEPARATELY]**<br><br>[No hearing set] |

# TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES........................................ ii

I.   INTRODUCTION.......................................... 1

II.  ARGUMENT. ............................................ 5

    A.   The Government is Entitled to Adjudication of the Criminal
        Forfeiture in This Case According to the Mandatory Authority
        Governing Such Forfeitures. ................................ 5

        1.   Motion for Reconsideration. ......................... 5

        2.   The extent of a criminal defendant's interest in forfeitable
               property is determined in the ancillary proceeding that follows
               the entry of a preliminary order of forfeiture.............. 8

               a.   *The significance of the in personam nature of criminal*
                    *forfeiture was not properly before the Court in Rivera.* 8

               b.   *The two-step process for criminal forfeiture must be*
                    *allowed to proceed as required by law.* ............. 9

    B.   Movant, Which Purports to Be the Owner of the Registered Marks, Is
        Statutorily Barred From Intervening in This Action Before the
        Ancillary Proceeding. ................................... 21

    C.   The Return of Property Seized Pursuant to the Amended Order Is Not
        Required. ............................................. 24

    D.   The Separate Bases for Retention of Seized Property Are Not
        Properly Addressed in This Setting. ........................ 25

    E.   The Amended Order Need Not Be Modified................... 25

III. CONCLUSION............................................ 26

# TABLE OF AUTHORITIES

**FEDERAL CASES**

PAGES

*Abbott Laboratories v. Garnder*,
    387 U.S. 136 (1967)............................................................. 7

*Alexander v. United States*,
    509 U.S. 544 (1993)............................................................. 11

*In re Bryson*,
    406 F.3d 284 (4th Cir. 2005). ............................................ 18

*De Almeida v. United States*,
    459 F.3d 377 (2d Cir. 2006). ............................................. 13

*F.P.P. Enterprises v. United States*,
    646 F. Supp. 713 (D. Neb. 1986), *aff'd*, 830 F.2d 114 (8th Cir. 1987)........ 19

*Feldman v. North British & Mercantile Insurance Co.*,
    137 F.2d 266 (4th Cir. 1943)............................................... 19

*Kona Enterprises, Inc. v. Estate of Bishop*,
    229 F.3d 877 (9th Cir. 2000). ............................................ 5

*School District 1J v. AcandS, Inc.*,
    5 F.3d 1255 (9th Cir. 1993). .............................................. 5

*Thomas v. Union Carbide Agricultural Products Co.*,
    473 U.S. 568 (1985)............................................................ 17

*United States v. Armstrong*,
    2007 WL 809508 (E.D. La. 2007). ..................................... 14

*United States v. BCCI Holdings (Luxembourg) S.A. (Final Order of Forfeiture and Disbursement)*,
    69 F. Supp. 2d 36 (D. D.C. 1999). ..................................... 21

*United States v. BCCI Holdings (Luxembourg) (Petition of ICIC Investments)*,
    795 F. Supp. 477 (D.D.C. 1992). ....................................... 17

*United States v. BCCI Holdings (Luxembourg) S.A. (Petition of Banco Central de Uruguay)*,
    977 F. Supp. 27 (D.D.C. 1997). ......................................... 18

*United States v. Bankston*,
    182 F.3d 296 (5th Cir. 1999). ............................................ 18

*United States v. Brown*,
    2006 WL 898043 (E.D. N.Y. 2006). ................................... 14

*United States v. Dejanu,*
    2002 WL 1291983 (C.A.9 (Cal.)). .............................................................. 20

*United States v. Gilbert,*
    244 F.3d 888 (11th Cir. 2001). ................................................................... 11

*United States v. Holy Land Foundation for Relief and Development,*
    493 F.3d 469 (5th Cir. 2007). ..................................................................... 21

*United States v. Ibrahim,*
    522 F.3d 1003 (9th Cir. 2008). ................................................................... 25

*United States v. Ida,*
    14 F. Supp. 2d 454 (S.D.N.Y. 1998). ......................................................... 18

*United States v. Kitsos,*
    770 F. Supp. 1230 (N.D. Ill. 1991). ...................................................... 18, 19

*United States v. Kramer,*
    912 F.2d 1257 (11th Cir. 1990). ................................................................. 21

*United States v. Lazarenko,*
    575 F. Supp. 2d 1139 (N.D. Cal. 2008). ................................... 13, 19, 20, 21

*United States v. McHan,*
    345 F.3d 262 (4th Cir. 2003). ..................................................................... 10

*United States v. Messino,*
    917 F. Supp. 1307 (N.D. Ill. 1996). ........................................................... 12

*United States v. Morgan,*
    224 F.3d 339 (4th Cir. 2000). ..................................................................... 18

*United States v. Nava,*
    404 F.3d 1119 (9th Cir. 2005). ............................................................ passim

*United States v. Reiner,*
    393 F. Supp.2d 52 (D. Me. 2005). .............................................................. 13

*United States v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003). ..................................................................... 25

*United States v. Schlesinger,*
    396 F. Supp. 2d 267 (E.D. N.Y. 2005). ...................................................... 14

*United States v. Segal,*
    339 F. Supp. 2d 1039 (N.D. Ill. 2004). ...................................................... 17

*United States v. Simmons,*
    154 F.3d 765 (8th Cir. 1998). ..................................................................... 17

*United States v. Taylor*,
    2000 WL 715916 (D. Or. 2000). .................................................... 17

*United States v. Weiss*,
    467 F.3d 1300 (11th Cir. 2006). ................................................... 18

*United States v. Wittig*,
    2006 WL 13158 (D. Kan. 2006). ................................................... 14

*United States v. Yeje-Cabrera*,
    430 F.3d 1 (1st Cir. 2005). ............................................................. 13

*Valley Finance, Inc. v. United States*,
    629 F.2d 162 (D.C. Cir. 1980). ...................................................... 19

*Waters v. Young*,
    100 F.3d 1437 (9th Cir. 1996). ...................................................... 13


**STATE CASES**

*Kaye v. Mount La Jolla Homeowners Association*,
    204 Cal. App. 3d 1476 (1988). ...................................................... 19

*Orser v. George*,
    252 Cal. App. 2d 660 (1967). ........................................................ 19


**FEDERAL STATUTES AND RULES**

18 U.S.C. § 1962. ............................................................................. 15, 24

18 U.S.C. § 1963. ............................................................................. 22, 23

18 U.S.C. § 1963(a). ............................................................................. 15

18 U.S.C. § 1963(i). ......................................................................... passim

18 U.S.C. § 1963(1). ....................................................................... 11, 22

18 U.S.C. § 983. ................................................................................... 22

18 U.S.C. § 983(d)(6)(B)(iii). .............................................................. 18

Title 21, United States Code. .............................................................. 25

21 U.S.C. § 853(k). ............................................................................. 13

Fed.R.Crim.P. 31(e). ........................................................................... 12

Fed.R.Crim.P. 32.2. .......................................................................... passim

Fed.R.Crim.P. 32.2(b)(1)......................................................................... 12

Fed.R.Crim.P. 32.2(b)(2)......................................................................... 13

Fed.R.Crim.P. 32.2(c)....................................................................... 11, 13

Fed.R.Crim.P. 32.2(c)(1)........................................................................ 11

Fed.R.Crim.P. 41(g). ............................................................................ 11

Civil Local Rule 7-18. .............................................................................. 5

Criminal Local Rule 57-1 ......................................................................... 5

# I.

## INTRODUCTION

On August 6, 2009, this court issued an Order (the "August 6 Order") in which it denied the government's unopposed application for entry of a preliminary order re registered trademarks and the government's motion to strike a motion by non-party movant Mongols Nation Motorcycle, Club, Inc. ("Movant") by which Movant seeks to intervene in this criminal prosecution with respect to the forfeitability of property against which criminal forfeiture is sought. The August 6 Order incorporated by reference and adopted the legal analysis undertaken and conclusions reached by the Court in an order issued on July 31, 2009 in a separate civil case (*Rivera v. Carter*, CV 09-2435 FMC) (the "July 31 Order"), in which another non-party to this criminal prosecution sought to collaterally attack the Amended Order Restraining Trademark entered in this case by motion for a preliminary injunction limiting the scope of the Amended Order.[1] The net result of these two collateral attacks by two non-parties to this case was the adjudication of the merits of the government's criminal forfeiture claims in this prosecution,

---

[1] The *Rivera* case, in which the defendants are various federal government officials, shares none of the same parties as this case. In a supplemental reply brief to which the government was permitted to respond only in a brief objection, the plaintiff in *Rivera* raised the issue of the supposed significance of the *in personam* nature of criminal forfeiture proceedings for the first time. Despite the fact that the motion in which the issue was raised was merely one for a preliminary injunction preventing the government from seizing certain property from plaintiff pursuant to the October 22, 2008 Amended Order Restraining Trademark entered in this case (the "Amended Order"), the Court undertook a substantive analysis of the criminal forfeiture in this case and issued the July 31 Order, in which it purported to finally adjudicate the merits of the criminal forfeiture in this case.

contrary to the explicit provisions of 18 U.S.C. § 1963(i) and Federal Rule of Criminal Procedure 32.2, which govern federal criminal forfeiture proceedings.[2]

In the August 6 Order, the Court called for further briefing on (1) whether Movant has standing to intervene in this action and, if so, whether it has done so properly; (2) whether the Court's premature adjudication of the criminal forfeitability of the trademarks compels the return of property seized pursuant to the Amended Order; (3) whether seizure of property seized from members of the Mongols motorcycle gang is justified for reasons apart from the alleged forfeitability of the registered marks; and (4) whether and to what extent the Amended Order should be modified.

As explained in detail below, the Court's adjudication of the merits of the criminal forfeiture in this case in the context of its determination of a preliminary injunction motion in a separate civil case involving none of the same parties, was improper and contrary to law.  The government was not given an opportunity in this case to brief the issue which the Court considered determinative of the forfeitability issue, as it was raised by the plaintiff in *Rivera* for the first time in his final reply.  Had the government been given a chance to brief the issue, it would have pointed out the material flaws in the *Rivera* plaintiff's argument, as well as the controlling law governing the order of proof and respective burdens in

---

[2]    The Court's August 6 denial of the government's application for a preliminary order of forfeiture with respect to the trademarks was based entirely on the Court's finding that defendant Cavazos had no ownership interest in the marks and the marks are therefore not subject to forfeiture.  *See* August 6 Order at 3.  However, the Court's inquiry into the extent of the defendant's interest in the marks was premature and contrary to the procedural requirements of Federal Rule of Criminal Procedure 32.2, which governs criminal forfeitures.  The applicable authority is unanimous in holding that the determination of the extent of a defendant's interest in property sought for forfeiture is to be made as part of the ancillary proceeding that commences *after* the entry of the preliminary order of forfeiture.

criminal forfeiture cases, established by the statutory scheme that governs criminal forfeitures. Rather than file a separate motion for reconsideration of the August 6 Order, the government addresses those issues here, as the premature determination of the forfeitability of the marks is dispositive of at least three of the issues to be addressed pursuant to the August 6 Order. Specifically, should the Court agree that it should not have determined the merits of the forfeitability of the marks, either in *Rivera* or at this stage of the instant case, it becomes clear that Mongols, Inc. (as the owner of the marks contesting their forfeiture) is statutorily barred from intervening here by 18 U.S.C. § 1963(i), and is required to wait for the ancillary proceeding to have its interest in the marks adjudicated, resolving issue (1). Likewise, since the ultimate forfeitability of the marks is not yet ripe for determination in this case, the June 29 Order does not compel the return of any property seized pursuant to the Amended Order, resolving issue (2). Finally, since Movant does not contend that probable cause for entry of the Amended Order was lacking (only that the Court's determination of the merits of the criminal forfeiture renders it invalid), the withdrawal of the premature determination of the merits of the forfeiture will establish that seizures pursuant to the Order were entirely proper.[3] The government therefore includes in this filing a motion for reconsideration of the August 6 Order to the extent that the latter constitutes an adjudication of the merits of the criminal forfeiture of the trademarks.

Finally, the government notes that the First Amendment arguments made in *Rivera* and repeated here by Movant appear to be overwhelming all aspects of the criminal forfeiture that is the real issue before this Court. Notwithstanding the invective hurled at the government in *Rivera* and this case, it was never the government's intent to infringe upon the First Amendment rights of anyone, and

---

[3]    The 4th issue has been resolved by the government's voluntary actions concerning enforcement of the Amended Order, as discussed below, making further amendment of the Amended Order unnecessary .

the record amply demonstrates the total lack of any such intent.  Rather, the

government's focus has always been on the forfeitability of the marks as property

acquired or maintained in violation of the RICO laws, and which provided a

source of influence over the RICO enterprise described in the Indictment.  In an

effort to clarify the substantive issues actually before the Court, the government

has voluntarily suspended enforcement of the Amended Order to the extent that it

allows seizure of items bearing the restrained mark from non-defendants, meaning

that no Mongols gang member need fear that the symbols of his membership in the

criminal enterprise will be seized from him pursuant to the Amended Order.

Should the government conclude in the future that such seizures are necessary for

purposes of public safety, it will make a separate request to the Court for such

authority.[4]  As explained below, the elimination of the First Amendment claims

disposes of virtually all of the issues presented by Movant's motion.

     For the reasons stated below, the Court should conclude that (1) the Court's

adjudication in *Rivera* of the merits of the ultimate forfeitability of the marks was

premature and should be withdrawn; (2) Movant's current motion is barred by 18

U.S.C. § 1963(i); (3) the proposed Preliminary Order of Forfeiture submitted by

the government should be entered; (4)  Mongols, Inc. must wait for the ancillary

proceeding to adjudicate its claim to the marks; (5) the government should not be

required to return any property seized pursuant to the Amended Order; and (5)

there is no need to modify the Amended Order in light of the government's

---

[4] The government notes that it will continue to seize such items as otherwise allowed by law.  Thus, for example, if a Mongols member uses items bearing the restrained mark to facilitate a narcotics transaction or some other offense justifying seizure and forfeiture, the government will effect seizures pursuant to that authority, which is entirely separate and apart from any authority granted by the Amended Order.

voluntary suspension of the execution of the seizure authority provided for therein without further authorization from the Court.

## II.

## ARGUMENT

**A.    The Government is Entitled to Adjudication of the Criminal Forfeiture in This Case According to the Mandatory Authority Governing Such Forfeitures**

1. Motion for Reconsideration

A motion for reconsideration is properly granted where the court has committed clear error or made a manifestly unjust decision. *See School District 1J v. AcandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F,3d 877, 890 (9th Cir. 2000).  The Local Rules for this district provide that a motion for reconsideration is proper where there is a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration, or upon a manifest showing of a failure to consider material facts presented to the court before such decision.  Civil Local Rule 7-18 (applicable pursuant to Criminal Local Rule 57-1).  As explained below, the premature determination of the criminal forfeitability of property is improper as a matter of law when it occurs in the criminal case in which the issues are raised. There is literally no authority for the proposition that it is appropriate for a court in a civil case to adjudicate the merits of a criminal forfeiture sought in a separate criminal prosecution involving different parties.[5]

_____

[5] Nor is it fair to say that the government had an opportunity to respond to the arguments in *Rivera* because it filed an objection to the plaintiff's final brief in that case or was grappling with Movant here on the separate issue of Movant's right to intervene in this prosecution.  The only filing in this case in which a party with standing to address the criminal forfeitability of the registered marks did so was the government's application for the preliminary order.  Everything else, both
(continued...)

1    The government moves for reconsideration of the August 6 Order denying

2  its unopposed application for entry of a preliminary order of forfeiture because it

3  appears to have been premised largely on a materially flawed legal analysis by a

4  party with no stake in the outcome of the forfeiture proceedings to which the

5  government was not given an opportunity to address the issues *in this case*.  The

6  Court's apparent decision to rely upon argument on the merits of this criminal

7  forfeiture made in a separate civil action put the government at an unfair

8  disadvantage here, in which it had no reason to anticipate or address such

9  arguments, particularly with respect to an unopposed application for entry of a

10  preliminary order of forfeiture.  Had the government been given the opportunity to

11  address the Court's concerns about the significance of the *in personam* nature of

12  criminal forfeiture and its effect on the entry of the preliminary order, it could and

13  would have explained the overwhelming authority prohibiting any inquiry into the

14  extent of a defendant's ownership interest in property subject to forfeiture at the

15  preliminary order stage of the criminal proceedings.  Since it was not given that

16  opportunity, the government respectfully asks that the Court revisit the

17  government's application (or at least withdraw its denial and allow an amended

18  application) based on a fully-formed record in this case of the standards and law

19  applicable to the entry of a preliminary order of forfeiture.

20    The purported adjudication of the merits of the criminal forfeiture in the

21  July 31 Order and the subsequent denial of the government's application for a

22  preliminary order of forfeiture in the August 6 Order, have had the cumulative

23  effect of neutralizing the statutory bar on intervention and allowing a party

24  _____

[5](...continued)

25  in this case and *Rivera*, dealt with collateral issues.  The government had no

26  reason to lay out the overwhelming legal authority concerning the order of

27  decision in criminal forfeiture cases in its unopposed application, and neither
   Movant not the plaintiff in *Rivera* challenged the underlying forfeitability of the

28  marks directly.

without standing to contest the criminal forfeiture in this case (Rivera) and derail the government's attempts to criminally forfeit property which the undisputed facts clearly demonstrate were an integral part of a criminal enterprise to which dozens of defendants have admitted to having belonged.  It now threatens to have the added effect of relieving Movant of the statutory burdens imposed upon it to prevent the forfeiture.  The end result is that property which the undisputed evidence shows is subject to forfeiture could be rendered immune from forfeiture without the underlying elements having been properly adjudicated or the government having been given an opportunity to test the claims of Movant, on which Movant bears the burden of proof.

Additionally, because the Court did not inform the government of its concerns regarding the significance of the *in personam* nature of criminal forfeiture before issuing the July 31 and August 6 Orders,  and appears to have accepted the one-sided and badly-flawed legal analysis of the plaintiff in *Rivera* on that issue, the Court rendered its merits decision in this case on the basis of an incomplete and error-filled record in the separate civil case.  This presents significant ripeness issues which, if left unresolved, will work manifest injustice against the government.[6]  By this motion, the government respectfully requests that the Court withdraw its August 6 Order denying the government's application for a preliminary order of forfeiture and enter the proposed preliminary order of forfeiture with respect to the trademarks.

///

///

---

[6]  The concept of ripeness is intended to "to prevent the courts . . . from entangling themselves in abstract disagreements." *Abbott Laboratories v. Garnder*, 387 U.S. 136, 148 (1967).

2.    **The extent of a criminal defendant's interest in forfeitable property is determined in the ancillary proceeding that follows the entry of a preliminary order of forfeiture**

a.    *The significance of the in personam nature of criminal forfeiture was not properly before the Court in Rivera*

The Court's conclusion that no individual defendant had any ownership interest in the registered marks was its sole basis for denying the government's application for entry of the proposed preliminary order of forfeiture.  *See* August 6 Order at 3.  That Order relies upon the Court's analysis of the criminal forfeitability of the marks in its July 31 Order in *Rivera*.  *Id.*  The *in personam* nature of criminal forfeiture proceedings is the primary focus of the July 31 Order as well, and is the basis for the Court's ultimate conclusion that the registered marks are not subject to forfeiture.  *See* July 31 Order, pages 6-14.  That issue also happened to be the primary focus of the final supplemental reply brief filed by the plaintiff in *Rivera*, to which the government was not given an opportunity to respond.

The sudden emergence of this issue at the literal tail-end of the extensive briefing in *Rivera*, and the absence of any briefing whatsoever on the issue in this case, presents substantial issues of fairness and substantive analysis.  Plaintiff in *Rivera* failed to mention the supposed significance of the *in personam* nature of criminal forfeiture in either his original moving papers or his original reply.  The government did not raise the issue in its briefing in that case because (1) *Rivera* is not a criminal forfeiture case (or even a forfeiture case); (2) a criminal defendant's interest in forfeitable property is an issue to be determined in the ancillary proceeding of the criminal case, *after* the entry of the preliminary order of forfeiture; (3) third parties are explicitly barred from intervening in pending criminal forfeiture cases, including through separate civil actions (*see* 18 U.S.C. § 1963(i)), and are barred from contesting the forfeitability of property subject to criminal forfeiture; and, as a result, (4) since the plaintiff in *Rivera* made no

8

ownership claim to the marks, the government had no reason to expect that the Court would allow him to argue the merits of the criminal forfeitability of the marks in that action, much less that it would make a merits determination of the criminal forfeiture in the context of that separate civil case.

Even that might not have been particularly significant had the limited analysis of the issue been restricted to the Court's determination of the motion before it in *Rivera*, since the issues in that case relate solely to whether items could be seized from plaintiff pursuant to the Amended Order. However, the Court went substantially further, using the unrebutted arguments of plaintiff in *Rivera* to adjudicate the entirety of the government's criminal forfeiture case in this criminal prosecution and deny the unopposed motion for entry of the preliminary order. Moreover, the Court actually reached into this case and pulled out the government's application for entry of a preliminary order of forfeiture, treating it as if it had been filed in *Rivera*. However, in filing the application here (which was done weeks before the filing of plaintiff's supplemental reply brief in *Rivera*), the government could not have anticipated or addressed the *Rivera* plaintiff's erroneous analysis of the *in personam* nature of criminal forfeiture or the appropriate order of decision in a criminal forfeiture case. Further, the application here, having been filed for an entirely different purpose, was obviously never intended to address any of the issues in *Rivera*, which are entirely separate and distinct from those presented in this prosecution.

          b.    *The two-step process for criminal forfeiture must be allowed to proceed as required by law*

The *in personam* nature of criminal forfeiture is not the beginning and end of the analysis of the criminal forfeiture of the registered marks. Both the *Rivera* plaintiff's argument in his supplemental reply brief and the Court's analysis in the July 31 Order place undue emphasis on the term itself without recognizing how the detailed statutory forfeiture scheme is specifically designed to serve the twin

goals of effecting the forfeiture of property used in or acquired through criminal activity and protecting the ownership rights of third parties.   Indeed, the very nature of the ***preliminary*** order of forfeiture is an acknowledgment of these twin goals, because the preliminary order merely extinguishes the interest of the defendant (whatever it may be), and the ancillary proceeding determines ownership of the asset, including the ownership of the defendant. *See United States v. McHan*, 345 F.3d 262, 274-75 (4th Cir. 2003).

In its July 31 Order, the Court acknowledges the fact that Rule 32.2, which governs criminal forfeiture procedure and sets out the elements required to be shown for entry of a preliminary order of forfeiture, "does not require a court to determine a defendant's exact ownership interest in forfeitable property once he has entered a plea agreement." July 31 Order at 14.  The Court goes on to acknowledge that "determining the extent of a defendant's forfeitable interest in the property vis-a-vis innocent third parties *should be decided in an ancillary proceeding after a preliminary order of forfeiture has been entered*." *Id.* (Emphasis added).  Then, having cited the applicable Rule 32.2 elements – determination of "what property is subject to forfeiture under the applicable statute" and, critically, "whether the government has established the requisite nexus between the property and the offense" - the Court inexplicably abandons Rule 32.2 and states, without any citation to authority, that "determining whether specific property is subject to forfeiture  . . requires the Court to first decide whether any defendant possesses a forfeitable interest in the specific property." *Id.* This, however, is not correct.

The provisions of Rule 32.2 concerning what determinations are to be made by the Court before entering the preliminary order of forfeiture are very clear:

**(b) Entering a Preliminary Order of Forfeiture.**

**(1) In General.** As soon as practicable after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted, on any count in an indictment or information regarding which criminal

forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay. The court's determination may be based on evidence already in the record, including any written plea agreement or, if the forfeiture is contested, on evidence or information presented by the parties at a hearing after the verdict or finding of guilt.

**(2) Preliminary Order.** If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment or directing the forfeiture of specific property without regard to any third party's interest in all or part of it. Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c).

Nowhere in the Rule is there a requirement that the Court "first decide whether any defendant possesses a forfeitable interest in the specific property." Nor has the government found any judicial authority suggesting the existence of such a requirement in the application of Rule 32.2. Indeed, the unanimous authority holds exactly to the contrary. This is partly because doing so would be a meaningless exercise: any interest the defendant has must be forfeited, regardless of what that interest is (<u>Alexander v. United States</u>, 509 U.S. 544, 562 (1993)); and to the extent that third parties have interests in the property, those interests are not affected by the preliminary order and will be adjudicated in the ancillary proceeding (in which the third party, not the government, bears the burden of proof) (Rule 32.2(c)(1); 18 U.S.C. § 1963(l)).[7]

[7]     "Congress chose to place the burden of proof on the third-party during the ancillary proceeding, since the government would necessarily have carried its burden or proving that the defendant's interest in the property was subject to forfeiture during the criminal trial."

*United States v. Nava*, 404 F.3d 1119, 1125 (9th Cir. 2005), quoting *United States*
(continued...)

The Advisory Committee Notes for the 2000 adoption of Rule 32.2 address this precise issue, and are explicit as to how it was resolved.  Noting how earlier versions of the forfeiture rules created ambiguity concerning what determination the court was required to make with respect to the defendant's interest in forfeitable property before entering a preliminary order of forfeiture, the Committee stated

> [T]he ancillary proceeding has become the forum for determining the extent of the defendant's forfeitable interest in the property. This allows the court to conduct a proceeding in which all third party claimants can participate and which ensures that the property forfeited actually belongs to the defendant.
>
> Since the enactment of the ancillary proceeding statutes, the requirement in Rule 31(e) that the court (or jury) determine the extent of the defendant' s interest in the property as part of the criminal trial has become an unnecessary anachronism that leads more often than not to duplication and a waste of judicial resources. There is no longer any reason to delay the conclusion of the criminal trial with a lengthy hearing over the extent of the defendant's interest in property when the same issues will have to be litigated a second time in the ancillary proceeding if someone files a claim challenging the forfeiture. For example, in *United States v. Messino*, 917 F. Supp. 1307 (N.D. Ill. 1996), the court allowed the defendant to call witnesses to attempt to establish that they, not he, were the true owners of the property. After the jury rejected this evidence and the property was forfeited, the court conducted an ancillary proceeding in which the same witnesses litigated their claims to the same property.
>
> A more sensible procedure would be for the court, once it (or a jury) determines that property was involved in the criminal offense for which the defendant has been convicted, to order the forfeiture of whatever interest a defendant may have in the property **without having to determine exactly what that interest is**. If third parties assert that they have an interest in all or part of the property, those interests can be adjudicated at one time in the ancillary proceeding.
>
> * * *
>
> **The new rule resolves these difficulties by postponing the determination of the extent of the defendant's interest until the ancillary proceeding.** As provided in (b)(1), the court, as soon as practicable after the verdict or finding of guilty in the criminal case, would determine if the property was subject to forfeiture in accordance with the applicable statute, *e.g.*, whether the property

[7](...continued)
*v. Gilbert*, 244 F.3d 888, 911 (11th Cir. 2001).

> represented the proceeds of the offense, was used to facilitate the offense, or was involved in the offense in some other way. The determination could be made based on the evidence in the record from the criminal trial or the facts set forth in a written plea agreement submitted to the court at the time of the defendant's guilty plea, or the court could hold a hearing to determine if the requisite relationship existed between the property and the offense. **Subdivision (b)(2) provides that it is not necessary to determine at this stage what interest any defendant might have in the property. Instead, the court would order the forfeiture of whatever interest each defendant might have in the property and conduct the ancillary proceeding**.

(Emphasis added). The Advisory Committee's Notes must guide a court's interpretation of a statute or Rule (*Waters v. Young*, 100 F.3d 1437, 1441 (9th Cir. 1996)), and courts applying Rule 32.2 have followed the guidance in the Notes. *See, e.g., De Almeida v. United* States, 459 F.3d 377, 381 (2d Cir. 2006) ("ancillary proceeding is evidently the *only* avenue for a post-indictment claim to forfeited property, because the statutory scheme bars commencement of 'an action at law or equity against the United States . . . .'") (quoting 21 U.S.C. § 853(k) and citing *Nava*, 404 F.3d at 1125); *United States v. Yeje-Cabrera*, 430 F.3d 1, 15 (1st Cir. 2005) (primary purpose of Rule 32.2(b)(2) was to preserve the resources of the court by deferring the ownership issue to the ancillary proceeding, thus avoiding duplicative litigation); *United States v. Lazarenko*, 575 F.Supp.2d 1139, 1145 (N.D. Cal. 2008) ("*Lazarenko 2008*") (citing the Committee note); and *United States v. Reiner*, 393 F.Supp.2d 52, 55 n.8 (D. Me. 2005) ("It is up to the judge, in an ancillary proceeding governed by Rule 32.2(c), to determine the extent of the defendant's interest in specific property to be forfeited.").

The reasons for this are readily apparent. As the Court knows, a crafty criminal does not title property in his own name. Depending on the degree of his craftiness, he titles it in the names of family members, fringe members of his criminal organization whom he feels he can trust, or the names of persons or entities that have no apparent connection to him or his crimes. Criminals will often create corporations, partnerships, trusts or other legal entities to hold title to

their criminal proceeds or property in an attempt to disguise its true ownership. Sometimes, a separate legal entity is the true owner of an asset but knowingly allows itself to be used as a shield in an attempt to protect property from forfeiture. If the court began its analysis of the criminal forfeiture issue by looking only at whether the property sought for forfeiture was titled in the defendant's name at the time of the indictment, the government would forfeit the property of only the most stupid defendants.[8]

Instead, the focus at the preliminary order of forfeiture stage is on the nexus between the property sought and the defendant's crimes, the inquiry the government asked the Court to undertake in its application for preliminary order of forfeiture. *See* Rule 32.2. For the same reasons, gratuitous argument concerning the impossibility of the government being able to own or make use of the registered trademarks if forfeited is well beyond the scope of either this briefing or the entry of a preliminary order of forfeiture. The government has obtained the forfeiture of numerous items and types of property used or acquired illegally, including medical and pharmacy licenses, alcohol permits, and explosives, chemicals and other commodities which are banned from use through treaty or other operation of law. The government can use none of these things, but that has

---

[8] It is for this reason that defendants are barred from objecting to the entry of a preliminary order of forfeiture on the ground that the property belongs to someone else. *See United States v. Armstrong*, 2007 WL 809508, at *4 (E.D. La. 2007) (since the extent of the defendant's interest is examined in the ancillary proceeding, defendant may not object to the entry of a preliminary order of forfeiture on the ground that property belongs to third party); *United States v. Brown*, 2006 WL 898043, at *5 (E.D. N.Y. 2006) (same); *United States v. Schlesinger*, 396 F.Supp.2d 267, 273 (E.D. N.Y. 2005) ("the extent of the defendant's ownership or interest in the property is not at issue in determining whether the court should enter a preliminary order of forfeiture"); *United States v. Wittig*, 2006 WL 13158, at *3 (D. Kan. 2006) (claim that third party is real owner is "premature" at the preliminary order stage - "a determination of the extent of a defendant's interest in the property is deferred until the ancillary proceeding").

no effect on the forfeitability of that property.  Defendants are not allowed to keep the instrumentalities of their crimes simply because those instrumentalities cannot be used or re-sold by the government, and any suggestion to the contrary simply ignores the clear language of the statutes and forfeiture law in general.[9]

In this case, the known facts are that Ruben Cavazos, while the National President of the Mongols, maintained and used the registered marks in violation of 18 U.S.C. § 1962, and that the marks afforded a source of influence over the RICO enterprise that he established, operated, controlled, conducted, or participated in the conduct of, rendering the marks subject to forfeiture under 18 U.S.C. § 1963(a).  Movant has not argued, and lacks standing to argue, either that probable cause was lacking for the initial issuance of the Amended Order, or that the marks were not used as alleged in the government's application for entry of a preliminary order of forfeiture.  Nor can it do so given the detailed allegations of the Indictment and the papers offered in support of the government's application for the restraining order, and the subsequent guilty plea of Cavazos.  The arguments in their supplemental brief are limited to (1) the supposed lack of an ownership interest by Cavazos and (2) their claim that seizure of items from non-defendants violates the First Amendment rights of unindicted members of the criminal gang described in the Indictment.  The first issue is not ripe for determination for the reasons discussed herein, and the second is mooted by the government's agreement to suspend its enforcement of the seizure authority against non-defendants, discussed below.

It is likewise undisputed that Cavazos, during the time period described in the Indictment when he served as the National President of the Mongols,

---

[9] The government does not concede that it cannot own or otherwise use the registered trademarks at issue here.  Indeed, it has every expectation of maintaining the marks and using them as collective membership marks.  That intent has no bearing on their forfeitability, however.

transferred the registered marks to a Nevada corporation which he controlled shortly after he registered them, and that the corporation remained the titled holder of the registered marks at the time the indictment in *Cavazos* was issued. While the Court states in the July 31 Order that "there is no evidence that Shotgun Productions LLC ever used the mark as a collective membership mark" (July 31 Order at 13), there is no requirement in Rule 32.2 that the government make such a showing in order to obtain a preliminary order of forfeiture. Likewise, the Court's statement that "the purported assignment to Shotgun Productions LLC [was] therefore without legal effect" (*id.*) assumes too much. The undisputed evidence shows that Ruben Cavazos enjoyed virtually unfettered control over the gang, including the use and display of the registered marks, for most or all of the period of time described in the Indictment.[10] During that entire time, the marks were used to promote the RICO enterprise that Cavazos directed and controlled with the explicit consent of the gang membership.[11]

Under the circumstances, it is reasonable to infer, for example, that the unincorporated association consented to Cavazos's actions as National President,

---

[10] Contrary to what is alleged to have been the practice under the post-indictment term of Martin Guevara (*see* paragraph 10 of the August 17 Guevara Declaration), Cavazos exerted exclusive personal control not only over the distribution of the marks, but their display by members as well. *See* Kozlowski Declaration at ¶38, describing a "code 55," by which Cavazos would order all members to refrain from wearing anything identifying themselves as Mongols until further notice.

[11] The government also notes that there *is* evidence that the marks were used as collective membership marks while titled in the name of Shotgun Productions. Both the Indictment and the Kozlowski Declaration demonstrate the control that Cavazos exerted over the distribution of patches bearing the marks during the time period described in the Indictment, which was co-existent with Cavazos's tenure as National President and the holding of the marks by Shotgun Productions.

1   including his transfer of the marks to Shotgun Productions.  The record is certainly

2   not well-developed enough to make a final determination that it did not.  Indeed,

3   the determination of that issue will likely not be ripe until after the conclusion of

4   the criminal case, as Cavazos's successor as National President, Hector Gonzalez,

5   is also a defendant in this action.[12]  More importantly, a corporate (or corporate-

6   like) form may be disregarded to forfeit property actually owned or controlled by

7   the defendant.  *See United States v. Taylor*, 2000 WL 715916, at *5 (D. Or. 2000)

8   (corporate president of defendant can agree to criminal forfeiture of property

9   nominally held by the corporation, and property can be forfeited even though

10  corporation is not a defendant); *United States v. Simmons*, 154 F.3d 765, 771 (8th

11  Cir. 1998); *United States v. Segal*, 339 F.Supp.2d 1039, 1050 n.14 (N.D. Ill.

12  2004); *United States v. BCCI Holdings (Luxembourg) (Petition of ICIC

13  Investments)*, 795 F.Supp. 477, 479 (D.D.C. 1992) (alter ego).

14       As for the supposed unincorporated association Mongol Nation, the

15  government is entitled to test the validity of that alleged independent legal entity

16  which, according to Movant does not presently exist, having been subsumed

17  within Movant its successor.  In fact, the existence of the purported

18  unincorporated association is evidenced so far only by the documents filed with

19  the USPTO and signed by Cavazos..  Whether and to what extent "Mongol

20  Nation" existed as an actual independent legal entity has yet to be seen, and the

21  fact that unincorporated associations in California, while technically capable of

22  owning property, are incapable of acting except through the acts of their members,

23  suggests additional issues.  That the alleged unincorporated association has not

24  been indicted is of no significance.  It is not at all clear that an unincorporated

25  association *can be* federally indicted, and even if it could, the unincorporated

26

27       [12] Where an issue will be clarified by further factual development, it is not
    ripe for adjudication, and the court should refrain from deciding it.  *Thomas v.

28  Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580 (1985).

association purported to have existed here has ceased to exist since the Indictment.

Additionally, the principles of straw and nominee ownership, as well as alter ego, apply in criminal forfeiture proceedings, and a defendant cannot insulate property from forfeiture simply by titling it in the name of another, whether that other is a natural person or some type of legal entity. *United States v. Weiss*, 467 F.3d 1300 (11th Cir. 2006) (nominee); *United States v. Nava*, 404 F.3d 1129, 1129-31 (a nominee holder of bare legal title under state law may not recover in ancillary proceeding); *In re Bryson*, 406 F.3d 284, 291 (4th Cir. 2005) (nominal ownership insufficient to prevent forfeiture; dominion and control determinative); *United States v. Morgan*, 224 F.3d 339, 343 (4th Cir. 2000) (same); *United States v. Bankston*, 182 F.3d 296, 319 (5th Cir. 1999) (petitioner, member of sham partnership with defendant, barred from recovery as mere straw); *United States v. BCCI Holdings (Luxembourg) S.A. (Petition of Banco Central de Uruguay)*, 977 F.Supp. 27 (D.D.C. 1997); and *United States v. Ida*, 14 F.Supp.2d 454, 461 (S.D.N.Y. 1998) (person who ostensibly used own money to purchase property and titled it in own name nevertheless a straw where evidence showed property was purchased for use of the defendant).

Both federal and California state law recognize that a party cannot avoid liability by putting property in the name of a nominee or alter ego. *See*, *e.g.*, 18 U.S.C. § 983(d)(6)(B)(iii); *United States v. Kitsos*, 770 F.Supp. 1230, 1236 (N.D. Ill. 1991) ("Where a corporation is found to be merely the alter ego or business conduit of a governing or dominant personality, . . . the corporate entity will be disregarded and the veil of limited liability pierced.")[13]; *F.P.P. Enterprises v.*

---

[13]    The government expects to present evidence in the ancillary proceeding that Cavazos was such a governing and dominant personality, and exercised control over the gang and the marks with the approval of the gang membership.

In determining whether to disregard a corporate entity,
(continued...)

*United States*, 646 F.Supp. 713, 719 (D. Neb. 1986), *aff'd* 830 F.2d 114 (8th Cir. 1987) (shells acting as alter egos may be pirced "whether characterized as trusts, business trusts, partnerships, corporations, or unincorporated associations"); *Kaye v. Mount La Jolla Homeowners Association*, 204 Cal.App.3d 1476, 1490 n. 9 (1988) (members of an association vicariously liable "if they entrust another member with the means to commit a tortious act"); *Orser v. George*, 252 Cal.App.2d 660, 670-71 (1967) (vicarious liability of individual members of an association where they personally participate or set in motion the acts leading to liability); *Feldman v. North British & Mercantile Ins. Co.*, 137 F.2d 266, 268 (4th Cir. 1943) (individual liability imposed where "member sets the proceedings in motion or agrees to a course of action which culminates in wrongful conduct"); *Valley Finance, Inc. v. United States*, 629 F.2d 162, 171 (D.C. Cir. 1980) (in tax context, entity may be pierced by government "when the corporate device frustrates the clear intendment of the law").

In a similar vein, the available authority holds that a non-defendant claimant to property subject to criminal forfeiture is barred from challenging the forfeitability of property in a criminal case except according to the timing and for the reasons expressed in the statute, which do not include challenges to the underlying legal basis for the forfeiture.  In *Lazarenko 2008*, the court considered

---

[13](...continued)

> the court will not rest its decision on a single factor but will look to a number of variables such as inadequate capitalization, failure to observe corporate formalities, the commingling of funds, and the absence of corporate records.  Where such variables are coupled with some element of injustice or fundamental unfairness, the corporation will be considered as an aggregate of persons both in equity and at law and its officers, directors and shareholders will be held individually liable for the corporation's debts and obligation.

*Id.*

whether a third party petitioner was limited in the arguments that it was allowed to make in the ancillary proceeding, or whether that proceeding provided an opportunity to challenge the forfeiture on any basis.  The petitioner there, like Movant here, sought to contest the underlying forfeitability of the property at issue.  The court held that the petitioner was required to wait until the ancillary proceeding to present any argument in opposition to the forfeiture.  Once in the ancillary proceeding, the petitioner's arguments were further limited.

Specifically, after a comprehensive analysis of the statutory criminal forfeiture framework, the court concluded that "the criminal forfeiture statutes do not afford the third party any right to challenge the underlying basis of the forfeiture."  *Lazarekno 2008*, 575 F.Supp.2d at 1147 (citation omitted).  Referring to the Advisory Committee Notes, the court held that "an ancillary proceeding 'does not involve relitigation of the forfeitability of the property.'"  *Id.* at 1148.  It further found that any potential due process concerns suggested by the inability to contest the underlying forfeitability of the property were necessarily resolved by the availability of the ancillary process itself, in which owners of the property are allowed to present their claims.  *Id.*

The *Lazarenko 2008* court further noted that this conclusion was consistent with *Nava*, in which the Ninth Circuit "clarified that a third party petitioner 'may prevail *only upon a showing*, by a preponderance of the evidence, that he possessed a vested or superior legal right, title or interest in the property at the time the criminal acts took place, or that he was a bona fide purchaser for value.'"  *Id.* at 1149, quoting *Nava*, 404 F.3d at 1125 (emphasis in original).[14]  The "'sole legal issue before the court [in an ancillary proceeding] is the ownership interests

---

[14]  *Lazarenko 2008* also cited the unpublished Ninth Circuit memorandum opinion in *United States v. Dejanu*, which stated "'[w]hether the criminal forfeiture of . . . property was proper is not an issue subject to litigation by third parties in an ancillary proceeding.'" 575 F.Supp.2d at 1149.

of the competing parties.'" *Id.*, quoting *Nava*, 404 F.3d at 1124 (further citations omitted).

The authorities explained above call into serious question the linchpin of the Court's holdings in its July 31 and August 6 Orders - that before entering the proposed preliminary order of forfeiture, it was required to decide whether Cavazos possessed a forfeitable interest in the marks. That conclusion informed and acted as the basis for the Court's ultimate conclusion in both Orders that the registered marks are not subject to forfeiture. The plaintiff in *Rivera* should not have been permitted to argue the merits of the criminal forfeiture sought in this case, in which he is not a party and lacks standing to appear for any purpose, and the adjudication of the forfeitability of the marks was not properly before the Court in *Rivera*. The Court should reconsider its declination of the government's application for entry of the preliminary order of forfeiture and, applying the elements of Rule 32.2 to the facts of this case, enter the proposed preliminary order or give the government the opportunity to submit an amended application.

**B.    Movant, Which Purports to Be the Owner of the Registered Marks, Is Statutorily Barred From Intervening in This Action Before the Ancillary Proceeding**

The bar on intervention in § 1963(i) is part of "an orderly forfeiture scheme for the resolution of non-party claims to forfeited property, and prevents non-parties from disrupting that scheme." *United States v. BCCI Holdings (Luxembourg) S.A. (Final Order of Forfeiture and Disbursement)*, 69 F.Supp.2d 36, 42 n.8 (D. D.C. 1999). The bar, explicitly limiting forfeiture challenges to the exclusive remedy provided by the ancillary proceeding process, prevents third parties from prematurely haling the government into court to adjudicate the criminal forfeiture aspects of a pending criminal prosecution (*United States v. Kramer*, 912 F.2d 1257, 1261 (11th Cir. 1990)) and relieves the government of the burden of having to defend the forfeiture against third party claims during an ongoing prosecution. *United States v. Holy Land Foundation for Relief and*

*Development*, 493 F.3d 469, 477 (5th Cir. 2007).

The statutory bar has been unfortunately and profoundly under-utilized here, as demonstrated by the fact that one non-party with no claim to the property subject to forfeiture has managed to temporarily derail a pending criminal forfeiture proceeding, and another has forced the government to engage in extensive litigation on an issue that is not properly before the Court at this stage of the litigation.  While the Court in its July 31 Order dismissed the defendants' argument that the *Rivera* action violated the bar, there is no room for such a dismissal here.  Movant claims to be the current owner of the registered marks.  The heart of its argument is that it, and not the defendants, are the owners of the marks, and that the marks are therefore not subject to forfeiture.  For the reasons explained above, the identity of the "true" owner of the marks is not yet ripe for adjudication, and the evidence produced by the government in support of its application, including the admissions of Cavazos, establish that there is a nexus between the underlying RICO offense and the marks.   Movant is, therefore, a "party claiming an interest in property subject to forfeiture" under 18 U.S.C. § 983 and is consequently prohibited from intervening in this action "involving the forfeiture of such property under" § 1963, "except as provided in [§ 1963] subsection (l)," which describes the ancillary proceeding process.

Movant's efforts to bury the forfeiture issues beneath an avalanche of First Amendment rhetoric need not be indulged.  Movant claims that the seizure of property pursuant to the Amended Order "has had a chilling effect on the members' freedom of speech and association rights" (August 17 Brief at 4), and argues that it should be allowed to intervene in this case on behalf of its members because they have suffered or will suffer loss of their First Amendment rights due to "the threatened seizure of additional property if the [Amended] Order remains in effect."  *Id.* at 6.  It further argues that it should be allowed to intervene here in that "the right circumstances are present . . . because the Court's [Amended] Order

violates the First Amendment rights of the Club's members." *Id.* at 18. These claims, suspect to begin with, are now moot. As explained in the Welk Declaration, the government voluntarily suspended its execution of the seizure authority provided in the Amended Order shortly after the issuance of the July 31 Order. The government will closely monitor the effect of that suspension to determine its effect on public safety, both in this district and elsewhere in the United States.[15] Should members of the Mongols use the registered marks to resume the course of criminal conduct that was the hallmark of their existence prior to the indictment (and which has fallen off precipitously since the issuance of the Amended Order), the government will request renewal of the seizure authority.

In the meantime, the voluntary suspension of seizures pursuant to the Amended Order renders moot the claims of Movant that the Amended Order presents some kind of threat to the First Amendment rights of its members. Since those claims were Movant's only basis, other than its ownership claim, for intervention[16], and its ownership claim must await the ancillary process for adjudication, Movant lacks standing to intervene on any issue involving the forfeiture of property under § 1963 until the ancillary proceeding.[17] As a result,

---

[15] As Movant freely admits, "members of the general public understand these symbols [*i.e.*, the registered marks] as representing the Club's ideology and purpose." August 17 Brief at 7. The historical manifestation of that ideology and purpose in the real world is set out in some detail in the Indictment and the Kozlowski Declaration.

[16] *See* August 17 Brief at 14 ("The Club filed its Motion solely to ensure due process for the interests of its members, . . . not to intervene or otherwise interfere with the government's criminal prosecution in this matter").

[17] Movant raises an argument for the first time at page 12 of the supplemental brief that the Amended Order's restriction on the licensing of the restrained mark should also be withdrawn. This is a particularly brash argument, considering that Movant admittedly ignored the prohibition of the Amended Order

(continued...)

1    Movant lacks standing to intervene in this action.[18]

2    **C.    The Return of Property Seized Pursuant to the Amended Order Is Not Required**

3    The second issue which the Court asked the parties to address is whether the

non-forfeitability of the marks compels the return of property seized from

Mongols gang members pursuant to the Amended Order.  For the reasons stated

above, the forfeitability of the marks is not yet ripe for determination, so their

potential non-forfeitability is not a proper basis for ordering their return.  Movant

cites no authority suggesting otherwise.  Its claim at page 21 of its supplemental

brief that property is not subject to seizure unless and until the government can

establish its forfeitability is a patent misstatement of the law and is unsupported by

any authority.  The government need do no more than establish probable cause for

forfeiture in order to seize property, and the issuance of the Amended Order

demonstrates that it did so here.

Moreover, consideration of the question whether property seized from non-

17    [17] (...continued)
that barred transfer of the restrained mark when it accepted such a transfer from
defendant Hector Gonzales, as explained in earlier briefing.  This new claim has
no Constitutional component, and deals solely with rights associated with
ownership.  Given the overwhelming evidence that the restrained mark has been
used extensively in violation of § 1962, there is no legal or factual basis for such
an amendment.

[18]    Movant's argument that it is "not attempting to actually intervene into the
criminal trial in this matter" because it "has no interest in the outcome of the
criminal charges" suggests a misunderstanding of the language of the statutory
bar.  The bar does not merely prevent a non-party's participation in the actual trial
of the criminal matter in which the criminal forfeiture is alleged, but all
proceedings in the trial court preceding entry of the preliminary order of forfeiture.
*See* 18 U.S.C. § 1963(i).  Criminal forfeitures are bifurcated proceedings, meaning
that they are tried separately from the underlying substantive charges and only in
the event of conviction.  If the bar applied only to the actual trial of the matter in
which the forfeiture was alleged, it would be completely superfluous.

defendants should be returned improperly converts Movant's motion into one for return of property under Federal Rule of Criminal Procedure 41(g) which, because Movant is a non-defendant, would be required to be treated (if filed) as a civil equitable action.  *See United States v. Ibrahim*, 522 F.3d 1003, 1007 (9th Cir. 2008); *United States v. Ritchie*, 342 F.3d 903, 906-07 (9th Cir. 2003).  The civil rules "apply to each stage of the proceedings, the same way they would in a civil context."  *Ibrahim*, 522 F.3d at 1008.  This requires service of the "complaint" under the Civil Rules and application of the full panoply of procedural and substantive mechanisms available to the government in a civil action.  There is no basis for ordering the return of seized items under the circumstances.

**D.    The Separate Bases for Retention of Seized Property Are Not Properly Addressed in This Setting**

The third issue which the court asked the parties to address is whether seizure of any property from Mongols members is authorized for reasons separate from the forfeitability of the marks.  The government notes first that there are legal bases separate from the Amended Order for forfeiture of items bearing the marks, including their involvement in facilitating violations of Title 21 of the United States Code and their involvement in money laundering transactions.  However, the government cannot address all of those issues in the limited space allotted to it here, and those issues are properly addressed in the context of a motion for return of property, since the claims before the Court have been made by non-parties to this prosecution.

**E.    The Amended Order Need Not Be Modified**

The final issue which the court asked the parties to address is whether and to what extent the Amended Order should be modified.  Given the government's

///

///

25

1  voluntary suspension of the seizure authority of items from non-defendants, there

2  is no need to modify the Amended Order.

### III.

### CONCLUSION

For the reasons stated herein, the government respectfully requests that the

Court reconsider and withdraw its denial of the government's application for entry

of preliminary order of forfeiture, and enter the proposed preliminary order in

accordance with Rule 32.2 and the authorities cited herein.


DATED: September 14, 2009

Respectfully submitted,

GEORGE S. CARDONA
Acting United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division


STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA