John W. MacPete (Cal. SBN: 157825)
    jmacpete@lockelord.com
LOCKE LORD BISSELL & LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Telephone: (214) 740-8662
Facsimile: (214) 756-8662

Albert Perez, Jr. (Cal. SBN: 152856)
    apjlawoffice@yahoo.com
LAW OFFICES OF ALBERT PEREZ, JR.
1000 Lakes Drive, Suite 380
West Covina, California 91790
Telephone: (626) 919-1991
Facsimile: (626) 919-1998

Attorneys for Non-Party
Mongols Nation Motorcycle Club, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR 08-1201 |
| Plaintiff, | ) **NON-PARTY MONGOLS NATION MOTORCYCLE CLUB'S REPLY IN SUPPORT OF ITS SUPPLEMENTAL BRIEF REGARDING STANDING, RETURN OF SEIZED PROPERTY, AND AMENDMENT OF POST-INDICTMENT RESTRAINING ORDER** |
| vs. | ) |
| RUBEN CAVAZOS, aka "Doc," et al. | ) |
| Defendants | ) HEARING DATE: TBD<br>) DEPT: Courtroom 750<br>) JUDGE: Hon. Florence-Marie Cooper |
| and | ) [Declarations of Martin Guevara (previously submitted), Rene Ruiz and Isaac Daza Filed Concurrently with Reply Brief] |
| Mongols Nation Motorcycle Club, Inc. | ) |
| Non-Party. | ) |

1    Pursuant to the Court's August 6, 2009 Order denying the government's

2    application for entry of a preliminary order of forfeiture as to the registered

3    trademarks and denying the government's motion to strike, non-party the Mongols

4    Nation Motorcycle Club, Inc. (the "Club") hereby files this reply in support of its

5    supplemental brief regarding standing, return of seized property, and modification of

6    the Court's restraining order.

7
8
9    Dated:  September 21, 2009              LOCKE LORD BISSELL & LIDDELL LLP

10

11                                          By:  /s/ John W. MacPete
                                                John W. MacPete
12                                              Robin L. Barnes

13                                              and Albert Perez, Jr. of the LAW
                                                OFFICES OF ALBERT PEREZ, JR.
14
                                                Attorneys for Non-Party
15                                              Mongols Nation Motorcycle Club, Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

I.     The Government's Motion for Reconsideration Should Be Denied ................... 1

II.    The Court Properly Denied the Government's Application for a
       Preliminary Order of Forfeiture .......................................................... 3

       A.     An Initial Determination of Forfeitability Is required under Rule
              32.2 .................................................................................. 3

       B.     The Government Cannot Establish that the Defendants Have any
              Ownership Interest in the Marks ............................................... 4

III.   The Club's Motion is Procedurally Proper ........................................ 9

IV.    There Are Still Unresolved First Amendment Issues ....................... 10

V.     There is No Basis for Seizure of Club Members' Personal Property ............... 12

       A.     Even if the Marks Are Forfeitable, the Personal Property of Club
              Members Is Not Subject to Seizure ........................................... 12

       B.     The Government Has Not Met its Burden to Permit Seizure of the
              Club Members' Personal Property .............................................. 14

       C.     The Government's Arguments Regarding Rule 41 are Yet Another
              Delay Tactic ....................................................................... 15

VI.    The Court's Order Should be Modified to Protect the Rights of the Club
       and its Members ................................................................................. 17

# TABLE OF AUTHORITIES

## CASES

*Grateful Palate, Inc. v. Joshua Tree Imports, LLC,*
  220 Fed.Appx. 635 (9th Cir. 2007) ...................................................................13

*Mid-Century Ins. Co. v. Gardner,*
  9 Cal.App.4th 1205 (Cal. App. 3d Dist. 1992).................................................8

*Sebastian Int'l, Inc. v. Longs Drugs Stores Corp.,*
  53 F.3d 1073 (9th Cir. 1995) ............................................................................13

*Sengoku Works Ltd. v. RMC Intern., Ltd.,*
  96 F.3d 1217 (9th Cir. 1996) ..............................................................................6

*United Drug Co. v. Theodore Rectanus Co.,*
  248 U.S. 90 (1918) ..............................................................................................6

*United States v. Busher,*
  817 F.2d 1409 (9th Cir. 1987)......................................................................4, 12

*United States v. Crozier,*
  777 F.2d 1376 (9th Cir. 1985)............................................................................10

*United States v. Ibrahim,*
  522 F.3d 1003 (9th Cir. 2008)............................................................................16

*United States v. Kennedy,*
  201 F.3d 1324 (11th Cir. 2000)....................................................................4, 12

*United States v. Nava,*
  404 F.3d 1119 (9th Cir. 2005)......................................................................4, 12

*United States v. Real Property in Waterboro,*
  64 F.3d 752 (1st Cir. 1995) .........................................................................10, 15

*United States v. Regan,*
  858 F.2d 115 (2d Cir. 1988) ...............................................................................4

*United States v. Riley,*
  78 F.3d 367 (8th Cir. 1996)....................................................................4, 12, 14

*United States v. Spilotro,*
  680 F.2d 612 (9th Cir. 1982) .......................................................................10, 14

*United States v. Taylor,*
  2000 WL 715916 (D. Ore. 2000) ........................................................................7

*United States v. Weiss,*
  467 F.3d 1300 (11th Cir. 2006)........................................................................7, 8

## STATUTES AND RULES

15 U.S.C. § 1060 (a)(3)................................................................................5

18 U.S.C. § 1963.............................................................................4, 8, 12

FED.R.CRIM.P. 32.2.................................................................................4

FED.R.CRIM.P. 41(g) ............................................................................16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF

## I.    THE GOVERNMENT'S MOTION FOR RECONSIDERATION SHOULD BE DENIED

The government has moved for reconsideration of the Court's denial of the government's application for an preliminary order of forfeiture regarding the two federally registered trademarks – U.S. Registration Nos. 2,916,965 for the word mark MONGOLS (the "Word Mark") and 3,076,731 for the Club's logo (the "Logo," collectively with the Word Mark, the "Marks"). Pursuant to Local Rule 7-18, a motion for reconsideration may only be made on the grounds of:

> (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

The government argues that it is entitled to reconsideration because it did not have a full and fair opportunity to respond to the "Court's concerns regarding the *in personam* nature of criminal forfeiture," which ultimately resulted in the Court's determination that the Club's registered trademarks are not forfeitable. The government's argument does not meet the requirements of Local Rule 7-18 for seeking reconsideration.

The government has not pointed to any material fact that it recently discovered or that the Court failed to consider in denying the government's application for a

1

preliminary order of forfeiture. Nor has the government pointed to any material difference in law that could not have been presented to the Court earlier had the government been diligent. The government's argument regarding its ability to adequately respond regarding the *in personam* nature of RICO's criminal forfeiture provisions does not qualify as a difference in law and it is certainly not a change in the law to justify seeking reconsideration. Moreover, the government's argument on this exact point has already been rejected by the Court in *Ramon Rivera v. Ronnie A. Carter*, et al., No. 2:09-cv-2435 FMC-VBKx (the "Rivera Action"). In that case, the government sought to "amend" the Court's preliminary injunction by arguing that the "sudden emergence" of the *in personam* issue deprived the government of a fair opportunity to respond. *See* Rivera Action, Dkt. No. 42, pp. 10-11. The Court rejected the government's argument, finding that its motion was really one for reconsideration of the preliminary injunction and that the government did have a full and fair opportunity to address the *in personam* nature of criminal forfeiture. See River Action, Dkt. No. 48, pp. 4-5.

Furthermore, the government cannot really claim it was surprised by the *in personam* arguments in the Rivera Action considering that issue was explicitly raised by the Club in its Motion to Amend the restraining order filed on June 16, 2009 ("Club's Motion"). The Club's Motion clearly states: "RICO's forfeiture provision is *in personam* and only reaches property and interests owned by the Defendants" and

the "Club disputes that its Word Mark Registration (identified in the indictment is forfeitable because the *in personam* nature of RICO's forfeiture provision only reaches the Defendant's property." *See* Dkt. No. 2445, pp. 7-8 and fn. 4. Not only did the government have ample notice and opportunity to respond to this issue in the Rivera Action, but it also could have responded in the two separate motions it filed seeking to take the hearing on the Club's Motion off-calendar (Dkt. No. 2095) and seeking to strike the Club's Motion (Dkt. No. 2138).[1] There simply was no "sudden emergence" of this issue as claimed by the government. Accordingly, even if the government did not adequately address the *in personam* nature of criminal forfeiture in its briefing in this case and the Rivera Action, it certainly had ample notice and opportunity to do so and its motion for reconsideration should be denied.

## II. THE COURT PROPERLY DENIED THE GOVERNMENT'S APPLICATION FOR A PRELIMINARY ORDER OF FORFEITURE

### A. AN INITIAL DETERMINATION OF FORFEITABILITY IS REQUIRED UNDER RULE 32.2

The government spends the vast majority of its supplemental brief arguing that it was procedurally improper for the Court to determine that the Marks are not forfeitable prior to the ancillary proceeding. The government argues that FED. R. CRIM. P. 32.2 does not require the Court to "first decide whether any defendant possesses a forfeitable interest in the specific property." *See* Govt. Supp. Brief, p. 11.

---

[1]    The *in personam* issue was also raised by the Club in its opposition to the government's motion to strike (Dkt. No. 2265).

However, the Rule does require such a determination – it explicitly states that the Court "must determine what property is subject to forfeiture under the applicable statute" and that it must enter a preliminary order of forfeiture only "[i]f the court finds that property is subject to forfeiture." FED. R. CRIM. P. 32.2. Under RICO's applicable forfeiture provision, 18 U.S.C. §1963, only the Defendants' interests in property is subject to forfeiture. *See United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2005); *United States v. Kennedy*, 201 F.3d 1324, 1329 (11th Cir. 2000); *United States v. Riley*, 78 F.3d 367, 370 (8th Cir. 1996); *United States v. Busher*, 817 F.2d 1409, 1413 (9th Cir. 1987). Therefore, in order to "determine what property is subject to forfeiture" as required by Rule 32.2, the Court must at least determine that the Defendant has *some interest* in the Marks that are alleged to be forfeitable in the indictment.

## B. THE GOVERNMENT CANNOT ESTABLISH THAT THE DEFENDANTS HAVE ANY OWNERSHIP INTEREST IN THE MARKS

Here, the government has not, and cannot, establish that any of the Defendants have any ownership interest in the Club's Marks.[2] Apparently, Ruben Cavazos claims to have owned the Marks in his plea agreement (which is under seal and not available

---

[2]    The Defendants' only interest in the Club's Marks are a limited license to use the Marks for their own personal property as long as they remain members in good standing of the Club. See Guevara Decl. on Supplemental Brief, ¶¶ 8-10. Although that limited license (and the Defendants' own personal property) may be forfeitable, the Club's Marks and the registrations therefore are not forfeitable. *See Riley*, 78 F.3d at 370-371; *Busher*, 817 F.2d at 1413, fn. 7 (even though the Club is the alleged enterprise named in the indictment, only the Defendants' interest in the enterprise, not the enterprise itself, is forfeitable); *United States v. Regan*, 858 F.2d 115, 119, fn. 2 (2d Cir. 1988) ("Where RICO defendant is a partner in a partnership, only is interest in that partnership, not the entire partnership, is forfeitable.").

4

NON-PARTY MONGOLS NATION MOTORCYCLE CLUB, INC.'S REPLY IN SUPPORT OF ITS SUPPLEMENTAL BRIEF REGARDING STANDING, RETURN OF SEIZED PROPERTY, AND AMENDMENT OF POST-INDICTMENT RESTRAINING ORDER

to the Club); however, the Court has already found there is no documentary evidence indicating the Marks were ever assigned to Mr. Cavazos. *See* August 6, 2009 Order Denying Application for Preliminary Order of Forfeiture ("August 6th Order), p. 3. In its application for a preliminary order of forfeiture, the government submitted assignment records from the U.S. Patent & Trademark Office – none of which included any assignment to Mr. Cavazos. Because the Marks are federally registered, any assignment to Mr. Cavazos would have to be in writing. *See* 15 U.S.C. § 1060(a)(3) ("Assignments shall be by instruments in writing duly executed.").

Moreover, those federal registrations were obtained in the Club's name while Mr. Cavazos served as the Club's president – an admission by Mr. Cavazos that the Club owned the Marks contrary to his current (and convenient) assertion of ownership in his plea agreement. Indeed, Mr. Cavazos executed the applications for both Marks and declared under penalty of perjury that the Club (as Applicant) was the owner of the Marks:

> The undersigned, **RUBEN CAVAZOS**, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. §1001, and that such willful false statements may jeopardize the validity of the application or any resulting registration, declares that he/she properly authorized to execute this Application and make this declaration; that he/she believes the Applicant is the owner of the collective membership trademark sought to be registered, or, if the application is being filed under 15 U.S.C. 1051 (b), he/she believes Applicant is entitled to use such mark in commerce; that to the best of his/her knowledge and belief no other person, firm, corporation or association has the right to use the above identified mark in commerce, either in the form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods of another person, to cause confusion, or to cause mistake, or to deceive; that all statements made of his own knowledge are true, and that all statements made on information and belief are believed to be true. These statements are made under penalty of perjury under the laws of the United States of America.
>
> Date: October 4, 2002
>
> By: _____
>
> Title: Chief Executive Officer

5

*See* Exs. A and E to the Govt. App. for Preliminary Order of Forfeiture.

The government's arguments and cited cases regarding "crafty" Defendants who title property in the name of another person or entity to avoid forfeiture are inapposite. *See* Govt. Supplemental Brief, pp. 13-19. It is undisputed that the Club's Marks were first adopted by the Club in 1969-1970 and have been continuously used by the Club and through its members in good standing ever since. *See* Guevara Decl. on Supplemental Brief ("Guevara Decl."), ¶ 6. Therefore, title to the Marks vested in the Club upon its respective first uses of the Marks. *See United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90 (1918) ("There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed. . . the right to a particular mark grows out of its use, not its mere adoption. . ."); *Sengoku Works Ltd. v. RMC Intern., Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996), as modified, 97 F.3d 1460 (9th Cir. 1996) ("To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services."). Mr. Cavazos would have been around 12 years old at the time the Club was formed and began using the Marks. He could not possibly have any ownership interest in the Marks arising out of first and continuous use and, as already discussed, there has not been any assignment to Mr. Cavazos. Therefore, there is no evidence to substantiate the statements regarding ownership of the Marks

6

contained in Mr. Cavazos' plea agreement, which the government had a self-serving interest in drafting.

Moreover, Mr. Cavazos' plea agreement cannot be considered any sort of admission by the Club and is not binding on the Club. The government cites *United States v. Taylor*, 2000 WL 715916 (D. Ore. 2000) for the proposition that a corporate president "can agree to criminal forfeiture of property nominally held by the corporation, and property can be forfeited even though [the] corporation is not a defendant." *See* Govt. Supplemental Brief, p. 17. The defendant in *Taylor* entered into a plea agreement in which he agreed property nominally held by a non-party corporation was forfeitable. *Taylor*, 2000 WL 715916 at *4. However, the defendant in Taylor was still the president of the corporation at the time he entered into the plea agreement, counsel for the corporation was involved in the negotiations of the plea agreement, and no petitions were filed claiming an interest in the property or otherwise objecting to the forfeiture of the corporate property. *Id*. at *1 and *4. This case is entirely distinguishable – Mr. Cavazos was no longer the president of the Club at the time he entered into his plea agreement, counsel for the Club was not involved in the negotiations (and has not even seen the plea agreement, which is under seal), and the Club certainly objects to forfeiture of its property.

Likewise, the *Weiss* case cited by the government is distinguishable. See Govt. Supplemental Brief, p. 18. In *Wiess*, the court denied a petition by the sole

7

shareholder, officer, and director of a corporation challenging the forfeitability of property held by the corporation.  However, there was evidence that the shareholder was admittedly acting as the criminal defendant's nominee in acquiring the forfeited property in the corporation's name.  *See United States v. Weiss* 467 F.3d 1300, 1303-1304 (11th Cir. 2006).  The sham nature of the corporation's ownership in *Weiss* is in stark contrast to the ownership by the Club which was established in 1969-1970, long before Mr. Cavazos became involved in the Club.  The other sham entity, nominal ownership, and alter ego[3] cases relied upon by the government are similarly distinguishable.

In the absence of any evidence that Mr. Cavazos or any other Defendant has an ownership interest in the Marks, and in the face of documentary evidence *submitted by the government* that demonstrates Mr. Cavazos does not have such an interest, it was entirely appropriate for the Court to conclude that the Marks are not subject to forfeiture under 18 U.S.C. §1963.  Having reached that conclusion, the Court was required to deny the government's application for a preliminary order of forfeiture, which could only have been granted "if" the court found the Marks were forfeitable because the Defendants had some ownership interest in them.  FED. R. CRIM. P. 32.2 (2).

---

[3]    The government has not established that the Club is Mr. Cavazos' alter ego. The government has the burden to establish alter ego and overcome the presumption of separateness.  *See Mid-Century Ins. Co. v. Gardner*, 9 Cal.App.4[th] 1205, 1212-1213 (Cal. App. 3d Dist. 1992).  The mere allegation that Mr. Cavazos acted as president of the Club is not enough to establish alter ego.

## III.   THE CLUB'S MOTION IS PROCEDURALLY PROPER

The government virtually ignores the numerous arguments made in the Club's Motion and its Supplemental brief supporting the procedural propriety of Club's Motion, opting to continue arguing the general importance of the ancillary proceeding and the anti-intervention provision rather than addressing the specific issues and arguments raised in this case.  The Club relies upon, but will not repeat, the arguments it has already made on the procedural issues.  However, there are a couple of points worth noting.

First, the government's arguments overly emphasize the procedural implications of the Club's ownership of the Marks.  The government erroneously asserts that the "heart of [the Club's] argument is that it, and not the defendants, are the owners of the marks and that the marks are therefore not subject to forfeiture." *See* Govt. Supplemental Brief, p. 22.  This mischaracterizes the Club's Motion and its position throughout these proceedings.  The Club has always maintained that it is the undisputed owner of the Marks, that none of the Defendants have any ownership interest in the Marks, and therefore the Marks are not subject to forfeiture.  *See e.g.* Club's Motion, p. 8, fn. 4.  However, the Club's Motion does not directly address the forfeitability of the Marks and recognizes several times that such a determination is not necessary for the Court to decide the issue actually presented in the Motion, namely whether it is proper to seize Club members' personal property bearing the

9

Marks. *Id*. Therefore, the Club's position on the ownership of the Marks does not render the Club's Motion procedurally improper.

Second, the government asserts that the anti-intervention provision prohibits the Club from not only "participating in the actual trial of the criminal matter in which the criminal forfeiture is alleged, *but all proceedings in the trial court* preceding entry of the preliminary order of forfeiture." *See* Govt. Supplemental Brief, p. 24, fn. 18 (emphasis added). That is simply not the law. Numerous cases have recognized a third-party's right to file motions and participate in hearings regarding seizure of property under a post-indictment restraining order. *See United States v. Crozier*, 777 F.2d 1376, 1383-1384 (9th Cir. 1985); *United States v. Spilotro*, 680 F.2d 612, 616 (9th Cir. 1982); *United States v. Real Property in Waterboro*, 64 F.3d 752, 755(1st Cir. 1995). The Club's Motion is in accordance with these and the other cases discussed in the Club's prior briefing.

## IV.   THERE ARE STILL UNRESOLVED FIRST AMENDMENT ISSUES

The government attempts to diminish the importance of the First Amendment issues involved by unilaterally declaring those issues to be "moot" because the government has voluntarily suspended seizures of Club members' property bearing the Marks. *See* Govt. Supplemental Brief, p. 23. Unfortunately, that does not resolve the First Amendment issues in this case. To begin with, the government's voluntary cessation of seizures is hollow at best. The government notes on two separate

occasions that it may still seize property if it, presumably in its sole discretion, determines seizure is warranted. *See* Govt. Supplemental Brief, p. 4, fn. 4 and p. 23.[4] Therefore, the threat of seizure is still very much real and has a chilling effect on the Club members' free speech and association rights. *See* Guevara Decl. ¶¶ 20-21.

Moreover, even if the government agreed to permanently cease seizures in this case without the gaping loopholes, the First Amendment issues are still not moot. The government remains in possession of a substantial amount of personal property bearing the Club's Marks and is refusing to return this property. This property is worn/displayed by members of the Club to symbolize their shared socio-political views in the exercise of their First Amendment rights. The government's retention of this property diminishes the members' ability to exercise those rights by wearing and displaying the seized property. *See* Guevara Decl. ¶ 20; Ruiz Decl. ¶ 10; Daza Decl. ¶10. As much as the government would like to sweep the First Amendment issues under the rug, they still exist and cannot be disregarded in the Court's analysis of the Club's Motion and the issues on which it has requested supplemental briefing.[5]

---

[4]    Should the government decide to renew its seizure efforts, it may do so without providing notice to or otherwise involving the Court. As indicated in footnote 4, the government states it "will continue to seize such items as otherwise allowed by law…. pursuant to authority, which is entirely separate and apart from any authority granted by the [Court's restraining order]." See Govt. Supplemental Brief, p. 4.

[5]    The government mentions that it did not intend to infringe upon the Club members' First Amendment rights. See Govt. Supplemental Brief, pp. 3-4. The Club does not really doubt that the government's intention was to harm the Club by seizing property without any real consideration of the potential First Amendment implications. However, the lack of intent does not excuse the infringement on the Club members' rights, which still must be remedied by the Court.

## V.    THERE IS NO BASIS FOR SEIZURE OF CLUB MEMBERS' PERSONAL PROPERTY

### A.    EVEN IF THE MARKS ARE FORFEITABLE, THE PERSONAL PROPERTY OF CLUB MEMBERS IS NOT SUBJECT TO SEIZURE

As discussed in the Club's Motion, even if the Marks are owned by Mr. Cavazos and are therefore forfeitable, there is no basis for permitting seizure of Club members' personal property under the Court's Restraining Order.[6]  This Court has already recognized that RICO's forfeiture provision is *in personam* and only reaches property and interests owned by the Defendants.  *See United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2005); *United States v. Kennedy*, 201 F.3d 1324, 1329 (11th Cir. 2000); *United States v. Riley*, 78 F.3d 367, 370 (8th Cir. 1996); *United States v. Busher*, 817 F.2d 1409, 1413 (9th Cir. 1987).  The Defendants do not own or have any interest in the personal property of the Club's other members.  Guevara Decl. ¶ 16. The government has not presented any evidence to the contrary.  Therefore, the seized personal property is **not** forfeitable, regardless of whether the Marks are forfeitable. *See Riley*, 78 F.3d at 370-371.  Because it is not forfeitable, it is not properly subject to seizure and should be immediately returned to the Club's members.  *See* 18 U.S.C. § 1963(d) (only property subject to forfeiture may be restrained);

---

[6]    The government asserts that because the forfeitability of the Marks is not yet ripe for determination, the potential non-forfeitability is not a proper basis for ordering the return of the Club members' personal property and that the Club "cites no authority suggesting otherwise."  *See* Govt. Supplemental Brief, p. 24.  Apparently, the government overlooked the Club's arguments regarding the *in personam* nature of criminal forfeiture and the trademark first sale doctrine made in the Club's Motion and its Supplemental Brief – both of which provide ample bases for returning the seized property notwithstanding any determination on the forfeitability of the Marks. *See* Club's Motion, pp. 7-10; Club's Supplemental Brief, pp. 21-22.

Additionally, as a matter of trademark law there is no basis for the government's interference with Club members' personal property. The government has not disputed that the Club's members have been granted licenses to use the Marks as long as they remain members in good standing. Indeed, the government indicates that if the Marks are forfeitable and the government becomes the owner of the Marks, it plans to continue "using [the Marks] as collective membership marks," which requires the government to maintain use of the marks through the Club's members. *See* Govt. Supplemental Brief, p. 15, fn. 9. However, the owner of a trademark does not have the right to interfere with any third parties' possession, use, or control of authorized goods bearing the trademark. This is a fundamental principle of trademark law known as the "first sale doctrine." *See Sebastian Int'l, Inc. v. Longs Drugs Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995); *Grateful Palate, Inc. v. Joshua Tree Imports, LLC*, 220 Fed.Appx. 635, 637 (9th Cir. 2007).

In this case, all of the personal property being seized by law enforcement officials pursuant to the Court's restraining order qualifies as authorized goods and is subject to the first sale doctrine. Therefore, regardless of whether the Club owns the Marks or, as the government contends, Mr. Cavazos owns the Marks (and consequently the government by way of forfeiture), there cannot be any interference with the possession, use, or control of these authorized goods. The government is improperly interfering with the Club member's license rights by seizing and refusing

13

to return the personal property of the Club's members.  The asserted forfeitability of the Marks does not give the government such rights.  Accordingly, the Club members' personal property should be immediately returned regardless of the Court's determination on the forfeitability of the Marks.

### B.    THE GOVERNMENT HAS NOT MET ITS BURDEN TO PERMIT SEIZURE OF THE CLUB MEMBERS' PERSONAL PROPERTY

The government bears the burden to establish the forfeitability of the Club members' personal property bearing the Marks in order to obtain (and, in this case, maintain) a pre-conviction restraining order over the property.  *See United States v. Spilotro*, 680 F.2d 612, 618 (9th Cir. 1982) ("We hold that [to meet its] burden in obtaining a restraining order in a RICO prosecution. . . government must demonstrate that it is likely to convince a jury, beyond a reasonable doubt, of two things: one, that the defendant is guilty of violating [RICO] and two, that the ... properties at issue are subject to forfeiture under the provisions of [RICO]. In addition, these determinations must be made on the basis of a full hearing; the government cannot rely on indictments alone."); *Riley*, 78 F.3d at 370 ("Before a pre-conviction restraint may issue, the government must demonstrate at a hearing that the RICO defendant is likely guilty *and that the property to be restrained will be subject to criminal forfeiture*.") (emphasis added).  For the reasons discussed above and in the Club's prior briefing, the government has not, and cannot, demonstrate the forfeitability of personal property belonging to the Club's non-indicted members.

Ordinarily, the level of forfeitability necessary to obtain a restraining/seizure order is sufficiently demonstrated through the indictment.  As stated in *Waterboro:*

> [T]he indictment itself establishes the merits of the government's case, and courts may enter a protective order "upon the filing of an indictment ... alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture...."
>
> ***
>
> "For the purposes of issuing a restraining order, the probable cause established in the indictment ... is to be determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based."

*Waterboro*, 64 F.3d at 756.  However, the indictment in this case did not allege that the personal property of any Club members was forfeitable, rather the only allegedly forfeitable property identified in the indictment is the federal registration on the Word Mark.  Therefore, the government must still demonstrate the forfeitability of the Club's personal property to maintain the Court's restraining order.  This the government has failed to do.  The government simply cannot meet its burden by relying on the forfeitability, or lack thereof, or lack of ripeness on the forfeitability of the Marks.  Without any evidence indicating the forfeitability of the personal property at issue, that property should be immediately returned and all further seizures prohibited.

## C.    THE GOVERNMENT'S ARGUMENTS REGARDING RULE 41 ARE YET ANOTHER DELAY TACTIC

The government also argues that Court's request for supplemental briefing on the issue of whether the personal property belonging to Club members should be

15

returned improperly converts the Club's Motion into a Rule 41(g) motion. *See* Govt. Supplemental Brief, p. 25. The government then asserts that under Rule 41(g) it is entitled to the "full panoply of procedural and substantive mechanisms" available in a civil action, including a suggestion that the Club would be required to file and serve a complaint even though the cases relied upon by the government treat the motion as the equivalent of a complaint. *See United States v. Ibrahim*, 522 F.3d 1003, 1007-1008 (9th Cir. 2008). Other than the vague suggestion that the government has been denied the benefit of a "complaint," the government does not indicate which of the panoply of civil mechanisms it would take advantage of under the circumstances or how it would in any way be harmed by treating the Club's Motion as one under Rule 41(g), if that is what the Court has even done. Tellingly, the government has had numerous opportunities to assert that the Club's Motion should be treated as one under Rule 41(g), but this is the first time the government has raised this issue. This appears to be yet another delay tactic by the government. First the government sought to take the Club's Motion off-calendar, then it sought to strike the motion, then it sought a three-week extension of time to file its supplemental brief, all in an effort to delay the ultimate determination of the issues raised in the Club's Motion and on which the Court has requested supplemental briefing. The Court should not condone the government's continued efforts to delay a decision of this matter.

## VI.    THE COURT'S ORDER SHOULD BE MODIFIED TO PROTECT THE RIGHTS OF THE CLUB AND ITS MEMBERS

The government asserts that the Court's restraining order need not be modified because the government has voluntarily suspended seizure of Club members' property. However, the seizure issue was not the only basis on which the Club's Motion sought to have the restraining order amended. The restraining order places numerous restraints on the Club's management and licensing of its Marks, which is causing injury to the Club's valuable property rights. These restraints are separate and apart from the authorization to seize personal property bearing the Marks. Additionally, the voluntary suspension of additional seizures does not go far enough for the reasons discussed above. The restraining order should be modified to require the government to permanently cease seizing Club members' property and order the government to immediately return that property, including property bearing only the Club's Logo, which was not included in the indictment and not identified in the restraining order. *See* Ruiz Decl. ¶ 7 and Daza Decl. ¶ 7.

Dated:  September 21, 2009            LOCKE LORD BISSELL & LIDDELL LLP


                                     By:  /s/John W. MacPete
                                          John W. MacPete
                                          Robin L. Barnes

                                          and Albert Perez, Jr. of the LAW
                                          OFFICES OF ALBERT PEREZ, JR.

                                          Attorneys for Non-Party
                                          Mongols Nation Motorcycle Club, Inc.

17

**PROOF OF SERVICE**

I am employed in Dallas County, Texas, by an attorney licensed to practice in the State of California.  My business address is 2200 Ross Avenue, Suite 2200, Dallas, Texas 75201-6776.  On September 21, 2009, I served the within document(s) described as:

> NON-PARTY MONGOLS NATION MOTORCYCLE CLUB'S REPLY IN SUPPORT OF ITS SUPPLEMENTAL BRIEF REGARDING STANDING, RETURN OF SEIZED PROPERTY, AND AMENDMENT OF POST-INDICTMENT RESTRAINING ORDER; DECLARATIONS OF RENE RUIZ AND ISAAC DAZA IN SUPPORT THEREOF.

on the interested parties in this action as stated below:

Attorneys for Plaintiff:

Steven Welk
Assistant U.S. Attorney
1200 U.S. Courthouse
312 North Spring Street, 14th Floor
Los Angeles, CA 90012
PH. (213) 894-7177
Fax: (213) 894-5710

☒ (BY MAIL) By placing a true copy of the foregoing document(s) in a sealed envelope addressed as set forth above.  I am readily familiar with this firm's practice for collection and processing of correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on Motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing contained in affidavit.

☒ (BY E-MAIL) Via Notice of Electronic Filing pursuant L.R. 5-3.3.

☒ (BY FAX) Via the facsimile number listed above.

I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 21, 2009, at Dallas, Texas.

_____
Michelle Kiner

1  John W. MacPete (Cal. SBN: 157825)
      jmacpete@lockelord.com
2  LOCKE LORD BISSELL & LIDDELL LLP
   2200 Ross Avenue, Suite 2200
3  Dallas, Texas 75201
   Telephone: (214) 740-8662
4  Facsimile: (214) 756-8662

5  Albert Perez, Jr. (Cal. SBN: 152856)
      apjlawoffice@yahoo.com
6  LAW OFFICES OF ALBERT PEREZ, JR.
7  1000 Lakes Drive, Suite 380
   West Covina, California 91790
8  Telephone: (626) 919-1991
   Facsimile: (626) 919-1998

9
   Attorneys for Non-Party
10  Mongols Nation Motorcycle Club, Inc.

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13                    WESTERN DIVISION

14

15  UNITED STATES OF AMERICA,        )  CR 08-1201
                                     )
16              Plaintiff,           )  DECLARATION OF RENE RUIZ IN
                                     )  SUPPORT OF NON-PARTY MONGOLS
17                                   )  NATION   MOTORCYCLE    CLUB'S
       vs.                           )  SUPPLEMENTAL REPLY BRIEF
18                                   )
19  RUBEN CAVAZOS,                   )  HEARING DATE: TBD
       aka "Doc," et al.             )  DEPT: Courtroom 750
20                                   )  JUDGE: Hon. Florence-Marie Cooper
21              Defendants           )
                                     )
22                                   )
                                     )
23  and                             )
                                     )
24  Mongols Nation Motorcycle Club, Inc. )
                                     )
25              Non-Party.           )

26

27       I, Rene Ruiz, am over 21 years of age, have been convicted of a felony, and

28

                                   1

am otherwise competent to make this Declaration.  This declaration is based on my personal knowledge.

1.    I am a member in good standing of the Mongols Nation Motorcycle Club, Inc. (the "Club").  The Club operates for the benefit of its members, to support their common interests and socio-political beliefs, including recreational riding and shared socio-political views.  I have been a member of the Club for three years.

2.    The Club is incorporated, has by-laws, officers, and conducts regular meetings.  The Club also has rules that its members must follow.  These rules include prohibitions on criminal activity.  Failure to follow the Club's rules can result in suspension and ultimately termination of membership in the Club.

3.    As a member in good standing, the Club has granted me a limited license to use the MONGOLS mark and the Club's Logo (depicted below) (the MONGOLS mark and Logo collectively referred to herein as the "Marks").



4.    My license allows me to wear or display the Marks (and similar variations on the Marks) on clothing items and other items of personal property, including vests and motorcycles, for as long as I remain a member of the club in good standing.  Other than my limited license rights, I do not own any rights in the

2

Marks.

5.     The Club's Marks are symbolic of the shared socio-political views and beliefs of its members. By wearing the Club's Marks on my clothing and displaying the Club's Marks on my personal property, I am expressing these shared beliefs and indicating my association with the Club. Because of the long-term use of these Marks, members of the general public have come to understand these symbols as representing the Club's ideology and purpose and that persons wearing or displaying these Marks are associated with the Club.

6.     I understand that this Court has entered a restraining order that applies to the Defendants and their agents, servants, employees, family members, and persons in active concert or participation with them. I understand that the restraining order (1) prohibits these persons from taking any action that would affect the availability, marketability or value of the Mongols trademark, including licensing the mark and (2) requires them to surrender for seizure all products, clothing, vehicles, motorcycles, books, posters, merchandise, stationary, or other materials bearing the Mongols trademark when they are presented with a copy of the Order.

7.     I own two t-shirts that bear the Club's Logo only (without the MONGOLS mark) and a hat with "MFFM" (which stands for Mongols Forever Forever Mongols, but does not actually display the word MONGOLS). This personal property has been seized by the government under the Court's order.

3

8.    I have not been indicted in this case.  Although I personally know many of the Defendants, I do not have any familial relationship with the Defendants and I have not participated in any of their alleged criminal activity.  Because my property has been seized, I have been injured by the loss of the use, control, and enjoyment of that property.

9.    The Defendants do not own or have any interest in my personal property that has been seized under the restraining order.

10.    The Court's Order is causing me injury because it is limiting my freedom of speech rights when I would like to be able to wear the personal property that has been seized as a symbol of the socio-political views I share with the Club's other members.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.  Executed at West Covina on 9/21 , 2009.

RENE Ruiz

1  John W. MacPete (Cal. SBN: 157825)
      jmacpete@lockelord.com
2  LOCKE LORD BISSELL & LIDDELL LLP
   2200 Ross Avenue, Suite 2200
3  Dallas, Texas 75201
   Telephone: (214) 740-8662
4  Facsimile: (214) 756-8662

5  Albert Perez, Jr. (Cal. SBN: 152856)
      apjlawoffice@yahoo.com
6  LAW OFFICES OF ALBERT PEREZ, JR.
7  1000 Lakes Drive, Suite 380
   West Covina, California 91790
8  Telephone: (626) 919-1991
   Facsimile: (626) 919-1998

9
   Attorneys for Non-Party
10 Mongols Nation Motorcycle Club, Inc.

11                   **UNITED STATES DISTRICT COURT**

12                   **CENTRAL DISTRICT OF CALIFORNIA**

13                        **WESTERN DIVISION**

14

| | | |
|---|---|---|
| 15 | UNITED STATES OF AMERICA, | ) CR 08-1201 |
| 16 | Plaintiff, | ) **DECLARATION OF ISAAC DAZA IN** |
| 17 | vs. | ) **SUPPORT OF NON-PARTY MONGOLS NATION MOTORCYCLE CLUB'S** |
| 18 | | ) **SUPPLEMENTAL REPLY BRIEF** |
| 19 | RUBEN CAVAZOS, | ) **HEARING DATE:** TBD |
| 20 | aka "Doc," et al. | ) **DEPT:** Courtroom 750 |
| 21 | Defendants | ) **JUDGE:** Hon. Florence-Marie Cooper |
| 22 | | ) |
| 23 | and | ) |
| 24 | Mongols Nation Motorcycle Club, Inc. | ) |
| 25 | Non-Party. | ) |

26

27          I, Isaac Daza, am over 21 years of age, have never been convicted of a felony,

28

---

1

and am otherwise competent to make this Declaration. This declaration is based on my personal knowledge.

1.    I am a member in good standing of the Mongols Nation Motorcycle Club, Inc. (the "Club"). The Club operates for the benefit of its members, to support their common interests and socio-political beliefs, including recreational riding and shared socio-political views. I have been a member of the Club for eight years.

2.    The Club is incorporated, has by-laws, officers, and conducts regular meetings. The Club also has rules that its members must follow. These rules include prohibitions on criminal activity. Failure to follow the Club's rules can result in suspension and ultimately termination of membership in the Club.

3.    As a member in good standing, the Club has granted me a limited license to use the MONGOLS mark and the Club's Logo (depicted below) (the MONGOLS mark and Logo collectively referred to herein as the "Marks").



4.    My license allows me to wear or display the Marks (and similar variations on the Marks) on clothing items and other items of personal property, including vests and motorcycles, for as long as I remain a member of the club in good standing. Other than my limited license rights, I do not own any rights in the

Declaration of Isaac Daza in Support of Non-Party Mongols Nation
Motorcycle Club, Inc.'s Supplemental Reply Brief

1  Marks.

2      5.    The Club's Marks are symbolic of the shared socio-political views and

3

4  beliefs of its members.  By wearing the Club's Marks on my clothing and displaying

5  the Club's Marks on my personal property, I am expressing these shared beliefs and

6  indicating my association with the Club.  Because of the long-term use of these

7

8  Marks, members of the general public have come to understand these symbols as

9  representing the Club's ideology and purpose and that persons wearing or displaying

10  these Marks are associated with the Club.

11

12      6.    I understand that this Court has entered a restraining order that applies

13  to the Defendants and their agents, servants, employees, family members, and

14  persons in active concert or participation with them.  I understand that the restraining

15

16  order (1) prohibits these persons from taking any action that would affect the

17  availability, marketability or value of the Mongols trademark, including licensing the

18  mark and (2) requires them to surrender for seizure all products, clothing, vehicles,

19

20  motorcycles, books, posters, merchandise, stationary, or other materials bearing the

21  Mongols trademark when they are presented with a copy of the Order.

22      7.    I own a chain with the Club's Logo attached (without the MONGOLS

23

24  mark).  This personal property has been seized by the government under the Court's

25  order.

26      8.    I have not been indicted in this case.  Although I personally know many

27

28

3

Declaration of Isaac Daza in Support of Non-Party Mongols Nation
Motorcycle Club, Inc.'s Supplemental Reply Brief

of the Defendants, I do not have any familial relationship with the Defendants and I have not participated in any of their alleged criminal activity. Because my property has been seized, I have been injured by the loss of the use, control, and enjoyment of that property.

9.    The Defendants do not own or have any interest in my personal property that has been seized under the restraining order.

10.    The Court's Order is causing me injury because it is limiting my freedom of speech rights when I would like to be able to wear the personal property that has been seized as a symbol of the socio-political views I share with the Club's other members.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed at West Covina on 9/21 , 2009.

Isaac Daza